IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>         **Plaintiff,**<br><br>v.<br><br>STEVEN KEARNS,<br><br>         **Defendant.** | 1:05-cr-146-WSD |

**OPINION AND ORDER**

This matter is before the Court on Defendant Steven Kearns' ("Defendant") Objections to the Report and Recommendation of the United States Magistrate Judge. (Def. Obj. [77].) The objections are to the Report and Recommendation ("R&R") of Magistrate Judge Joel M. Feldman dated February 21, 2006. (R&R [73].) In the R&R, the Magistrate Judge considered Defendant's Preliminary Motion to Suppress Evidence [10], Amendment to Motion to Suppress March 16, 2005 Search of Defendant's Residence [16], and the Preliminary Motion to Suppress [52] filed after the superceding indictment was returned.[1]

---

[1] The superseding indictment added Count Two which alleges Defendant knowingly possessed child pornography. (First Superceding Indictment [42].) Defendant filed his Second Amendment to Motion to Suppress March 16, 2005 Search of Defendant's Residence [58], seeking suppression of the alleged child pornography seized during the March 16, 2005 search. This motion was

*Standard of Review*

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject or modify a magistrate judge's report and recommendation. 28 U.S.C. § 636(b)(1)(C); Williams v. Wainwright, 681 F.2d 732 (11th Cir. 1982), cert. denied, 459 U.S. 1112 (1983). A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). This requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party." Jeffrey S. v. State Bd. of Educ. of Ga., 896 F.2d 507, 512 (11th Cir. 1990).

Defendant has not objected to the facts set out by the Magistrate Judge in the Report and Recommendation, and the Court adopts those facts as the factual findings of the Court. To the extent Defendant directs the Court occasionally to additional facts and at other times places a different interpretation of the facts

---

considered separately by Magistrate Judge Feldman, is addressed in a separate R&R issued on May 22, 2006 [87], and Defendant filed separate objections to this R&R. The Court will therefore consider these objections in a separate Order.

found by the Magistrate Judge,[2] the Court has considered these additional facts and the Defendant's interpretation of the facts found by the Magistrate Judge.

Defendant's Objections fall into three categories.[3]  First, Defendant argues that the law enforcement personnel who executed the warrant violated the knock-and-announce requirement, and thus any evidence seized during the search is required to be excluded.  (Def. Obj. [77], at 7-23.)  Defendant also argues that the knock-and-announce violation required the suppression of any statements the Defendant made after the agents' entry, irrespective of the fact they were made after Defendant acknowledged and waived his Miranda rights.  (<u>Id.</u> at 22-23.)

Second, Defendant argues the search of Defendant's trash at his residence violated the Fourth Amendment, and the use of trash pull information in the search

---

[2]  For example, Defendant urges the Court to consider the facts set out in Defendant's Supplemental Memorandum in Support of Amendment to Motion to Suppress March 16, 2005 Search of Defendant's Residence Relating to Counts I and II of the Superceding Indictment [57].  Where Defendant has directed the Court to additional facts, the Court has considered them in connection with Defendant's Objections.  The emphasis Defendant places on the facts surrounding the knock-and-announce issue and their materiality is substantially affected by the Supreme Court's recent decision in <u>Hudson v. Michigan</u>, 126 S. Ct. 2159 (2006).

[3]  The arguments Defendant advances largely reiterate arguments made by the Defendant to the Magistrate Judge.  This Court has, nonetheless, reviewed each of the arguments made in the Objections.

warrant affidavit was materially misleading. (Id. at 3-7.) Defendant argues the Magistrate Judge erred in not suppressing evidence that resulted from the search conducted pursuant to the allegedly defective warrant. (Id.) Finally, Defendant argues that the misconduct of Special Agent Boyd was sufficient to invalidate the search conducted pursuant to the warrant. (Id. at 23-32.)

## DISCUSSION

### A. Knock-and-Announce Requirement

Defendant argues that the manner in which law enforcement entered his residence to execute the warrant violated the knock-and-announce requirement and that any evidence seized and any statements made by Defendant after entry must be suppressed. Defendant presents detailed factual information about the manner in which agents announced their presence and the minimal time that expired between their announcement and the forced entry into the residence.

After Defendant filed objections to the Magistrate Judge's findings and recommendations regarding the knock-and-announce rule, the Supreme Court decided Hudson v. Michigan, 126 S. Ct. 2159 (June 15, 2006), which squarely addresses whether the exclusionary rule applies to a violation of the knock-and-announce requirement. The Supreme Court framed the issue as "whether violation

of the 'knock-and-announce' rule requires the suppression of all evidence found in a search." Id. at 2161. The Court noted three purposes of the rule: (1) protection of human life and limb; (2) "protection of property . . . giv[ing] individuals the opportunity to comply with the law and avoid the destruction of property occasioned by forcible entry;" and (3) protection of "those elements of privacy and dignity that can be destroyed by a sudden entrance." Id. at 2165. Assuming that the knock-and-announce rule had been violated, Justice Scalia considered the purpose of the rule and whether the exclusionary rule was a remedy for its violation. The Court wrote: "What the knock-and-announce rule has never protected, . . . is one's interest in preventing the government from seeing or taking evidence described in a warrant. Since the interests that *were* violated in this case have nothing to do with the seizure of the evidence, the exclusionary rule is inapplicable." Id.

Here, Defendant seeks to exclude evidence seized and statements he made after the knock-and-announce rule was allegedly violated. Like in Hudson, the issue is whether evidence seized pursuant to the warrant and statements made by Defendant after entry are required to be excluded, and therefore Hudson applies. The knock-and-announce violation (assuming there was one) that Defendant

5

claims in this case does not implicate any of the interests protected by the rule. As the Supreme Court reasoned:

> social costs of applying the exclusionary rule to knock-and-announce violations are considerable; the incentive to such violations is minimal to begin with, and the extant deterrences against them are substantial -- incomparably greater than the factors deterring warrantless entries when *Mapp* was decided. Resort to the massive remedy of the suppressing evidence of guilt is unjustified.

Id. at 2168. Hudson dictates that because the interests protected by the knock-and-announce rule are not implicated here, exclusion of evidence and statements resulting from the search, especially after Defendant acknowledged and waived his Miranda rights, is not warranted.[4] Accordingly, Defendant's objection based on the knock-and-announce violation is overruled.

---

[4] Defendant might argue that his privacy and dignity interests were violated, those violations affected his ability to resist making a statement, and thus the violation affected a recognizable interest. This argument violates the reasoning in Hudson. First, the privacy/dignity interest extends only to the initial need to prepare to meet those who initially entered to execute the warrant. Hudson, 126 S.Ct. at 2165. In this case, Defendant was out of bed and waiting for the enforcing officers when they entered. Second, this initial interest expired once entry was achieved. Finally, the effect of the initial entry on Defendant's statements was substantially ameliorated by the reading to Defendant of his Miranda rights and his decision to waive them.

## B. Residence Curtilage and the Trash Inspection

In his second objection, Defendant seems to argue that because the trash searched was within the curtilage of his home, it was not "abandoned" as represented in the affidavit presented to the Magistrate Judge who issued the warrant to search his residence.[5]  The characterization of the trash as having been abandoned was, Defendant claims, either untruthful or, at least a reckless disregard for the truth, requiring a finding that the warrant was invalid.

A defendant does not have a reasonable expectation of privacy in trash he places in a public place for public pickup, and Defendant's claim that the seizure of his trash was illegal is unfounded.  See California v. Greenwood, 486 U.S. 35, 40-41 (1988); United States v. Hall, 47 F.3d 1091, 1095-96 (11th Cir. 1995).  It is well-established that:

> The bulwark of Fourth Amendment protection is, of course, the Warrant Clause, requiring that, . . . police obtain a warrant from a neutral and disinterested magistrate before embarking on a search. . . . When the Fourth Amendment demands a factual showing sufficient to comprise probable cause, the obvious assumption is that there will be a *truthful* showing.  This does not mean "truthful" in the sense that every fact recited in the warrant affidavit is

---

[5]  In his affidavit, the testifying agent described the "trash pulls" he conducted and parenthetically characterized the trash as "abandoned property."

7

> necessarily correct. . . . But surely it is to be "truthful" in the sense that the information put forth is believed or appropriately accepted by the affiant as true.

Franks v. Delaware, 438 U.S. 154, 164 (1977) (quotations and citations omitted).

In this case, Defendant was allowed to investigate the validity of the warrant and the affidavit on which it was based.  Specifically, the Defendant was afforded a Franks hearing at which he thoroughly explored the method of the trash pull and the collection of information from the trash that was used to obtain the warrant to search Defendant's premises.  The facts developed at the Franks hearing show that the trash was not at the curb, but several feet from it, in plain view, not screened from view or protected, and accessible to anyone who walked on the property.  Defendant claims the fact the trash was within the curtilage of his residence precluded a characterization that the trash had been "abandoned."  Thus, the Defendant claims, the inclusion of this characterization rendered the affidavit untruthful, and the warrant was invalid.[6]  The Court disagrees.

---

[6] Defendant further claims the warrant affidavit was misleading because it did not disclose that Mr. Hugh Cofield, the trash collector who picked up the Defendant's trash, was cooperating with the government by tendering the trash to government agents after pick-up and receiving a payment of $10.00 each of the four times trash was tendered.  The trash, however, was picked up by Mr. Cofield pursuant to Defendant's agreement for these services and in Mr. Cofield's regular performance of his duties.  Even though a government agent was in the trash truck

8

Whether the trash was within Defendant's curtilage simply requires a different Fourth Amendment analysis than when trash is retrieved from public areas. In Hall, the Eleventh Circuit discussed the implications of a Defendant's curtilage as it applies to trash pulls. It said:

> The curtilage concept originated as common law to extend the area immediately surrounding a dwelling house. The concept of curtilage plays a part in determining the reach of the Fourth Amendment's protections. The Supreme Court used the concept of curtilage . . . to distinguish between the area outside a person's house which the Fourth Amendment protects, and the open fields, which are afforded no Fourth Amendment protection. In general, the curtilage is defined as the area around the home which "harbors those intimate activities associated with domestic life and the privacies of the home."

Hall, 47 F.3d at 1097. To determine if an area qualifies as curtilage, four factors

---

on one or more occasions when Defendant's trash was picked up, only Mr. Cofield collected the trash, and he did so in the manner in which he ordinarily performed his work. Mr. Cofield testified he did not request any money for performing his collection duties, but accepted it at the agent's request, telling them the amount paid was not necessary. (R&R, at 17-18.) In all cases, Mr. Cofield never deviated from his normal procedure for handling and picking up Defendant's trash. (Id. at 17.) The manner in which the trash pick up was conducted, specifically that it was accomplished in the ordinary and customary way in which Mr. Cofield perform his duties, shows that the warrant was not misleading. The failure to disclose in the affidavit that Mr. Cofield was gratuitously offered a small amount of money for the disruption in his regular routine does not make the affidavit misleading.

9

are used: "(1) the proximity of the area claimed to be curtilage to the home; (2) the nature of the uses to which the area is put; (3) whether the area is included within an enclosure surrounding the home; and, (4) the steps the resident takes to protect the area from observation." Id.  The Fourth Amendment, however, is violated only if a Defendant has a subjective expectation of privacy in the area searched that society accepts as objectively reasonable. Greenwood, 486 U.S. at 40.

In this case, the area from which the trash was collected was not an area which "harbors those intimate activities associated with domestic life and the privacies of the home." In colloquial terms, Defendant put his trash on his driveway, at most, several feet from the public street, fully expecting it to be picked up by his trash collector. The area in which it was placed was not shielded from view, and from the evidence Defendant elicited at the Franks hearing, the trash was visible, unenclosed and in an area to which any visitor to the residence would have had access. The trash, therefore, was not within Defendant's curtilage for Fourth Amendment purposes. Furthermore, Defendant did not have an objectively reasonable expectation of privacy in the trash placed in his driveway. The trash was only several feet from the street and was easily accessible to any person, and Defendant anticipated that it would be removed by the trash collector.

The search of the trash itself, therefore, was not a violation of the Fourth Amendment. It was therefore accurate for the agent to describe the trash as something which was abandoned to be picked up by the trash collector, and the affidavit was not untruthful or misleading.[7] Therefore, the warrant and search conducted pursuant to the warrant were constitutional. Defendant's objections to the affidavit because of its reference to abandoned property and based on an impermissible search of the curtilage are overruled.

### C. Agent Conduct at Search

Finally, Defendant objects to the Magistrate's conclusions and reiterates his argument regarding the conduct of Special Agent Boyd during the search. Defendant argues that the agent's misconduct rendered the search an unconstitutional "general or exploratory search," and all the evidence seized during the search is required to be excluded. (Def. Obj., at 23.) Defendant's argument that the search was a general, exploratory one is based on an incident in which Special Agent Boyd discovered a faux mink coat in a closet, put it on, and had his

---

[7] The Court further agrees with the Magistrate Judge that even without information developed from the trash pulls, there were sufficient facts in the affidavit which independently provided probable cause for the warrant to be issued.

picture taken holding a bottle of cognac and a bag of marijuana.  (Id. at 25.) Defendant objects to the Magistrate Judge's analysis that "'[the seizure of extraneous items pursuant to the execution of a search warrant, however, is in sufficient [sic] to invalidate an otherwise valid search. (Id. at 24) (citing United States v. Schandal, 947 F.2d 462, 465 (11th Cir.1991)).  Defendant argues:

> While this statement of the law may be correct
> in searches where the conduct of the agents is
> not an intentional violation of a warrant or otherwise
> in bad faith, agent Boyd's conduct in this case
> is completely and utterly outrageous and represents
> a total disregard of the intentions of the Framers
> of the constitution [sic] and their concerns for the
> rights of the people to be secure in the effect and
> privacy of their homes.

(Id.)  Defendant does not contend that it was impermissible to search the coat, conceding that:

> While the search of the premises for white collar
> documents and computer information might have
> permitted an agent to examine clothing found in
> the residence, there can be no argument that S.A.
> Boyd's outrageous conduct of seizing defendant's
> mink coat without his permission, putting it on
> his person and derisively [sic], with alcohol and
> marijuana in hand, requesting another agent to
> to take pictures of him was unreasonable as that term
> is defined in Fourth Amendment jurisprudence.
> Boyd's conduct amounted to impermissible

> execution of the warrant, resulting in an exploratory or general search facilitated by the worst kind of police misconduct.

(Id. at 28.) Defendant also does not challenge the seizure of marijuana. Defendant appears to argue that because Special Agent Boyd's conduct with respect to the items seized was unreasonable,[8] this unreasonable conduct made the search unreasonable under the Fourth Amendment, and any evidence seized from the unreasonable search must be suppressed. This reasoning is flawed and suppression is not required.

Where the limitations of a search warrant are ignored and law enforcement officials engage in a general search of premises beyond that which a warrant allows, a search may become constitutionally invalid. See Stanford v. Texas, 379 U.S. 476, 485 (1965); Maryland v. Garrison, 480 U.S. 79, 84 (1987). That is not what occurred here. Defendant does not contend that any of the specific items in question were prohibited from being searched or seized. Thus, Defendant does not

---

[8] Defendant also contends that other agents present at the search and who had knowledge of the picture that was taken of Special Agent Boyd were not forthcoming about what happened during the search and the disposition of the picture. The Court concludes that the Defendant ultimately was able to develop the facts about Special Agent Boyd's conduct at the seach.

complain about the scope of the search.[9]  His complaint is with the treatment of evidence which was seized.  While the Court agrees that Special Agent Boyd's conduct was unprofessional and inexcusable, it does not provide a basis for exclusion of evidence lawfully and properly seized during the search.  The exclusionary rule may apply where a search is conducted beyond the limitations of a warrant, such that the search becomes a search of evidence of any kind to incriminate a defendant.  See Stone v. Powell, 428 U. S. 465, 492 (1974).  When applied in the context of a general, exploratory search, the exclusionary rule "deter[s] police conduct by eliminating the incentive for police officers to disregard constitutional requirements on the chance they may turn up evidence which would incriminate a defendant."  United States v. Aiudi, 835 F.2d 943, 945 (1st Cir. 1987).  Here, however, Defendant seeks to expand the application of the exclusionary rule to deter conduct regarding the treatment of evidence seized.  The treatment of the evidence here did not result in evidence being tainted, altered or otherwise made unreliable.  In fact, the items described -- a faux mink coat, a bottle of cognac, and marijuana -- do not appear relevant to the offenses charged in the

---

[9] Defendant acknowledged "the search of the premises for white collar documents and computer information might have permitted an agent to examine clothing found in the residence."  (Def. Obj., at 28.)

14

indictment and are, at most, extraneous. That the treatment of these ancillary items appeared calculated to inappropriately mock or ridicule the Defendant or his conduct was distasteful, mocking, and out-of-line; however, the deterrence of distasteful and inappropriate conduct by law enforcement officers is not an interest the exclusionary rule is designed to address.[10] As the Supreme Court noted in Hudson in the context of the knock and announce rule, the "social costs of applying the exclusionary rule to [this] violation [would be] considerable; the incentive to such violations is minimal to begin with, and the extant deterrences against them are substantial." Hudson, 126 S.Ct. at 1268. The Court declines to apply the exclusionary rule here for the same reasons. "Resort to the massive remedy of suppressing evidence of guilt is unjustified," especially when the conduct involved extraneous items that do not appear to be relevant evidence to the offenses with which the Defendant is charged. Id.

**CONCLUSION**

For the reasons stated above,

**IT IS HEREBY ORDERED** that Defendant's Objections to the Report and

---

[10] There are other processes to address and deter the kind of agent conduct that occurred here.

Recommendation of the United States Magistrate Judge [77] are **OVERRULED**. The Court **ADOPTS AS ITS ORDER** the Report and Recommendation [73] issued by the Magistrate Judge, as supplemented by the Court's opinion in this order.  Defendant's Preliminary Motion to Suppress Evidence [10] and Amendment to Motion to Suppress [16] are **DENIED** as set out in the Report and Recommendation.

    **SO ORDERED** this 15th day of September, 2006.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE