IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>v.<br><br>STEVEN KEARNS,<br><br>        Defendant. | 1:05-cr-146-WSD |

**OPINION AND ORDER**

This matter is before the Court on Defendant Steven Kearns' Objections (the "Objections") [91] to the Report and Recommendation ("R&R") of the United States Magistrate Judge [87] regarding Defendant's Second Amended Motion to Suppress [82]. Defendant objects to the R&R of Magistrate Judge Joel M. Feldman dated May 22, 2006.[1] In the R&R, the Magistrate Judge recommended that Defendant's motion to suppress the seizure of alleged child pornography material be denied because the search warrant was supported by probable cause, stated with particularity the items to be seized, and was executed in a reasonable

---

[1] Defendant filed a previous Motion to Suppress [52] which was the subject of Magistrate Judge Feldman's Report and Recommendation dated February 21, 2006 [73]. Defendant objected to the February 21, 2006, Report and Recommendation [77]. These objections were addressed by the Court in its September 15, 2006, order issued earlier today.

manner.  (R&R, at 23.)

*Standard of Review*

After conducting a careful and complete review of the findings and recommendations, a district judge may accept, reject or modify a magistrate judge's report and recommendation.  28 U.S.C. § 636(b)(1)(C); Williams v. Wainwright, 681 F.2d 732, 732 (11th Cir. 1982), cert. denied, 459 U.S. 1112 (1983).  A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C).  This requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party."  Jeffrey S. v. State Bd. of Educ. of Ga., 896 F.2d 507, 512 (11th Cir. 1990).

Defendant has not objected to the facts set out by the Magistrate Judge in the Report and Recommendation, and the Court adopts those facts as the factual findings of the Court.[2]  In his two page objection, Defendant does not offer any additional argument and simply reiterates the arguments he asserted in his Second Amended Motion to Suppress [82], which he attached to the Objections.

---

[2] The Report and Recommendation incorporated the facts set out in the February 21, 2006, Report and Recommendation [73] issued by the Magistrate Judge.  (R&R [77], at 4 n.4.)

*Background*

In his Objections, Defendant reiterates the position he argued to the Magistrate Judge that the search conducted of each file on CD number 29 ("CD29") pursuant to the warrant issued to search Defendant's residence was unreasonable and an impermissible general search. (Def. Obj., at 1.) The warrant authorized a search for evidence of financial, accounting and real estate fraud. It specifically authorized investigating authorities to seize and search computers including computers, floppy disks and CDs. Computer electronic storage media, including hard drives and CDs, were seized pursuant to the warrant.

The specific media at issue is one of 35 CDs that were seized. The first 28 CDs contained various "business software such as legal forms, legal documents, application forms and loan forms (i.e., software templates which could be used to create business documents)." (R&R, at 10-12.) Special Agent Murray tried to open all of these files. Id. The remaining seven CDs "contained various types of created files, including document files (.doc), image or picture files (.jpg), and music or audio files (.mp3)." Id. Agent Murray opened or attempted to open all of the first 28 CDs to determine if they contained information of value to the fraud

investigation.  Id.

The first CD of the remaining seven that Special Agent Murray examined was CD29 entitled "Music 12005." In accordance with his normal procedure when searching smaller electronic storage media, Special Agent Murray opened each of the files on CD29.  (R&R, at 11.)  Six of the files contained what appeared to Special Agent Murray as child pornography and erotica.  These images were interspersed on CD29 among music, media and document files, one of which was a software program relevant to the fraud investigation.

After these six images were discovered, they were downloaded to a separate disk and forwarded to the National Center for Missing and Exploited Children to determine if they depicted child pornography.  Three of the six images were determined to be pornographic images of children.  (Id. at 13.)  During the search for fraud-related evidence, Agent Murray did not search the computers or disks seized for child pornography.  A second warrant to conduct a search for child pornography was later secured to search the computers.

Defendant does not contest the seizure of CD29 pursuant to the warrant authorizing a search for fraud-related evidence.  Rather, Defendant argues that when Agent Murray reviewed CD29 and discovered the first suspected image of

4

child pornography, it was objectively unreasonable for him to continue his routine practice of opening each file despite indications that files bearing sexually suggestive names and .jpg extensions contained child pornography. (Def. Obj., at 3.) According to Defendant, the Government was required to obtain a second warrant to search for child pornographic material. Defendant claims:

> Agent Murray, upon opening the first JPG file with a sexually suggestive title on CD29 and discovering suspected child pornography, did not terminate his search of similarly titled files with JPG extensions on that CD and seek a second search warrant for child pornography. Instead, Agent Murray kept opening each and every file regardless of title,[3] extension, and thus reasonable notice of its contents.

(Def. Obj., at 2.)

Defendant thus contends that the government's decision to continue to review the electronic storage media for fraud-related material and to seize additional suspected pornographic material when it was discovered caused the search to be unconstitutional. Specifically, Defendant argues the search became a

---

[3] The six files were titled "virgin blond Elizabeth," "Lolita gang rape bang f***," "two fat pussys," "some girl cum," "six underage nudist preteen girls lined up virgin pussys," and "anal penetration preteen 3 year old sex child." (Def. Br. in Supp. of Second Am. Mot. to Suppress [82], at 5.)

constitutionally impermissible general exploratory search, and any alleged child pornography material seized is required to be suppressed. (Def. Br. in Supp. of Second Am. Mot. to Suppress [82], at 8.)

*Discussion*

Defendant does not contest that the warrant authorized the seizure of electronic storage media and the search of that media for evidence of real estate or financial fraud. Defendant also does not assert that the item of suspected child pornography initially discovered and seized was done so illegally. Rather, Defendant argues that "when Secret Service Agent Murray, . . . came across the first 'JPG' file containing suspected child pornography on the defendant's external media music CD, which exceeded the scope of the warrant, he did not terminate his search of the CD and seek a search warrant for suspected child pornography." (Id. at 3.)[4]

---

[4] Defendant argued in his Second Amended Motion to Suppress that the investigating agent "did not employ a key word search to focus the search and locate the files containing fraud-related material" and "did [not] even attempt to determine if any effort had been made to disguise or conceal or manipulate files by changing file extensions or file signatures, e.g. .doc (word document) to .jpg (image file)." (Br. in Supp. of Second Am. Mot. to Suppress, at 5.) Defendant, however, did not object to the Magistrate's finding that a search protocol was not required, and the Court finds no plain error in this conclusion.

The Court agrees that a search must be constitutionally reasonable and its scope constitutionally proper.  See Horton v. California, 496 U.S. 128, 138 (1990).  The Court concludes the search conducted here met these constitutional requirements.  Special Agent Murray, who searched the electronic media, considered each kind of storage media before he determined the reasonable method for searching it.  In searching a computer generally, which contains very large amounts of data, he opened those files where he was likely to find documents or information described in the warrant, rather than searching each stored item.  Smaller storage media, and CDs in particular, required a different approach.  For CDs, Special Agent Murray opened each file.  This was necessary to insure that he identified all material permitted to be seized pursuant to the warrant, because he knew files could be saved under different names and named to disguise their contents.  Defendant argues that procedure should have been altered once Special Agent Murray opened the first file with a .jpg identifier and a suggestive title and discovered suspected child pornography.

Under the facts here, it was not unreasonable for Agent Murray to open briefly each file on CD29 to view it for evidence of fraudulent activity.[5]  In this

---

[5] The Court's conclusion is based on the specific facts of this case.

case, the government intercepted a conversation in which Defendant stated he was aware of the investigation and had taken step to alter his electronic storage media, specifically, by deleting information from it.  (R&R, at 7-8.)  Importantly, Special Agent Murray was aware that in CDs like CD29, files can be saved under a name and extension which disguises the content of the file.  Contrary to Defendant's assertion that Special Agent Murray should have stopped short of opening and viewing the files containing child pornography because he should have known what kind of material each file contained without having to open it, Special Agent Murray was authorized to cursorily review the files to determine if they were covered by the search warrant.  (R&R, at 18-19.)  The Magistrate correctly pointed out that the warrant authorized the search of photographs related to fraud; therefore the agent was permitted to open and inspect contents of graphical images.  In fact, the agent even found financial or business documents that were labeled with a .pdf format, but instead contained pictures.  (R&R, at 20.)

Other courts have acknowledged that computer files can be disguised.  In United States v. Hill, 322 F. Supp. 2d 1081 (C.D. Calif. 2004),  Judge Kozinski considered a defendant's argument that investigating agents should first have conducted a search of file names to identify files more likely to have child

pornography, such as files with a ".jpg" suffix.  The Court found this proposal unreasonable, stating that "'[c]omputer records are extremely susceptible to tampering, hiding, or destruction, whether deliberate or inadvertent.'"  Hill, 322 F.Supp.2d at 1090 (quoting United States v. Hunter, 13 F. Supp. 2d, 574, 583 (D.Vt. 1998)).  "Forcing police to limit their searches to files that the suspect has labeled in a particular way would be much like saying police may not seize a plastic bag containing a powdery white substance if it is labeled 'flour' or 'talcum powder.'"  (Id.)  The Court explained what is necessary to conduct the search properly:  "There is no way to know what is in a file without examining its contents, just as there is no sure way of separating talcum from cocaine except by testing it."  Id. at 1090-91.  The Ninth Circuit recently affirmed the district court's reasoning and decision.  United States v. Hill, No. 05-50219, 2006 WL 2328721 (9th Cir., Aug. 11, 2006).  The Circuit Court further noted:

> We have also held that even though a warrant authorizing a computer search might not contain a search protocol restricting the search to certain programs or file names, the officer is always "limited by the longstanding principle that a duly authorized warrant, even one with a thorough affidavit, may not be used to engage in a general, exploratory search."  The reasonableness of the officer's

>acts both in executing the warrant and in performing a subsequent search of seized materials remains subject to judicial review.

Id. at *10.

The investigating agent also knew the CD on which the suspected child pornography was found was particularly susceptible to changed file names. He knew specifically that file names did not accurately reflect file content, because in reviewing individual files, he had found "financial or business-related documents that were in a .pdf format that contained .jpgs or pictures." (R&R, at 10-11 n.9.) Further, the suspected child pornography was disbursed throughout CD29. In short, an objectively reasonable agent could conclude that material and information that was described in the warrant might be contained in the six subject .jpg files which turned out to be pornographic. See United States v. Childers, 117 Fed. Appx. 633, 636 (10th Cir. 2004).[6]

---

[6] Although Defendant points out that a second warrant was obtained in the Childers case, the Childers court ultimately held that, under a warrant authorizing a search for evidence of fraud, it was proper to review a videotape for evidence of fraud even when it was labeled with a sexually suggestive title. The Court observed: "even homemade videotapes containing sexual material reasonably could also contain evidence of [value in the investigation.]" Thus, the Court held that cursory review of the videotape fell squarely within the warrant. Id. Defendant's argument in its Objections that Childers is inapposite is therefore unconvincing.

The review of the six files conducted by Special Agent Murray was reasonable and consisted simply of opening a file to determine if it contained material covered by the warrant.  Thus, the Court concludes, that under the specific facts here, Special Agent Murray properly reviewed the files on the CD29 pursuant to the warrant.  When Special Agent Murray discovered the six items of suspected child pornography,[7] he was engaged in a review that was constitutionally permitted and thus was allowed to seize this evidence of another crime.  See United States v. Heldt, 668 F.2d 1238, 1267 (D.C. Cir. 1981); United States v. Wuagneux, 683 F.2d 1343, 1349 (11th Cir. 1982), cert. denied, 464 U.S. 814 (1983).[8]  It was not unreasonable for Special Agent Murray to conclude the files on CD29 were not accurately labeled, that they might contain evidence of fraud, and thus he was allowed to open them and conduct a limited cursory review.

---

[7] The Magistrate also noted that when a file was opened and suspected child pornography detected, Agent Murray closed the file, preserved it and sent for analysis by the National Center for Missing and Exploited Children.  (R&R, at 12-13.)

[8] The Court agrees with the Magistrate that Defendant's reliance on United States v. Carey, 172 F.3d 1268 (10th Cir. 1999) is misplaced.  (See R&R, at 20.) In Carey, the investigating agent abandoned the search of the evidence described in the warrant to search for material the warrant did not describe.  That did not occur in this case.

The Court necessarily concludes that the search and review of material seized during the search pursuant to the warrant, including the seizure of the six suspected child pornography images, was objectively reasonable and did not violate the Fourth Amendment.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Objections to the Report and Recommendation [91] are **OVERRULED.**

The Court **ADOPTS AS ITS ORDER** the Report and Recommendation [87] issued by the Magistrate Judge, as supplemented by the Court's opinion in this order.  Defendant's Second Amended Motion to Suppress [82] is **DENIED**.  **SO ORDERED** this 15th day of September, 2006.

                                                                        _____
                                                                        WILLIAM S. DUFFEY, JR.
                                                                        UNITED STATES DISTRICT JUDGE